**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **NO: 5:25-CR-50001-001** |
| **V.** | ) | |
| | ) | |
| **BRADLEY DOUGLAS QUILLEN** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR DOWNARD DEPARTURE AND VARIANCE

### I.    Background

COMES NOW, The Defendant Bradley Douglas Quillen (**"Defendant"** or **"Mr. Quillen"**) through undersigned counsel, comes before this Court and offers the following for his Motion Downward Departure and Variance:

On January 29, 2026, Mr. Quillen received U.S. Probation Officer Diem Nguyen's Initial Pre-Sentence Investigation Report (**"PSR"**)). On February 11, 2026, Mr. Quillen, based on review and agreement, through counsel, filed several objections to the PSR. Subsequently, a Final Pre-Sentence Investigation Report was filed on February 18, 2026, which resolved some objections asserted by the Defendant, but left several objections unresolved which are addressed in Mr. Quillen's Sentencing Memorandum filed contemporaneously with this Motion on April 27, 2026. The Final PSR recommended Mr. Quillen receive life imprisonment, but for the foregoing reasons, this Court should depart and vary downward from that recommendation.

1

## II.    Argument

**A.    Defendant is Eligible for a Sentence Below the Recommended Guideline in Accordance with His Position Compared to Other Similarly Situated Defendants.**

Mr. Quillen should receive a downward variance pursuant to the factors elicited in 18 U.S.C. § 3553(a). The court shall consider any arguments for a variance after all considerations to a departure have been made. *See Gall v. U.S.*, 552 U.S. 38, 51 (2007).  The analysis for a variance differs from that of a departure. *See e.g., United States v. Fumo*, 655 F.3d 288, 317 (3rd Cir. 2011), as amended (Sept. 15, 2011).  And, in some cases, a prohibited ground for departure may be a valid reason for the court to vary. *See e.g., United States v. Chase*, 560 F.3d 828, 832 (8th Cir. 2009) (reasoning that departure precedents do not bind district courts with respect to variance decision but may be considered "persuasive authority"). Furthermore, a court could grant a departure and a variance in the same sentence.

Pursuant to 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary, and consider the following factors in making its determination:

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of  sentences available; (4) the kinds of sentence and the sentencing range  established for: (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement. . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Due to the § 3553 factors, discussed below, this Court should depart and vary from the recommended sentence of life imprisonment and sentence Mr. Quillen to a term of imprisonment

at or below the average sentence for similarly situated defendants. As the Final PSR states, this term is 345 months. ¶ 380.

### 1.    The Nature and Circumstances of the Offense

The first § 3553(a) factor requires the court to consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). On November 20, 2025, Mr. Quillen pled guilty to Count One, Coercion and Enticement of a Minor, and Count Four, Sexual Exploitation of a Minor Via Production of Child Pornography.

When compared to defendants charged with the same or similar offenses, Mr. Quillen's conduct does not measure up to the same severity. *See United States v. Wilson*, 565 F.3d 1059, 1063 (8th Cir. 2009) (finding defendant had kidnapped the 16-year-old minor victim, forced her to work as a prostitute and an exotic dancer, and took videos of her engaging in various sexual acts using his cell phone and a video camera); and *United States v. Rayl*, 270 F.3d 709, 713 (8th Cir. 2001) (finding the defendant took the minor victim to a motel room, displayed an open pocket knife, forced her to undress, took photos of the minor victim while undressed, showed her photos of other young girls claiming them to be defendant's adopted daughters, touched her breasts and vagina, and offered her lingerie).

Further, the evidence does not show that Mr. Quillen accessed the "Dark Web," nor did he engage in conversation with other offenders. Mr. Quillen did not distribute any images or videos to any other known person, and, most importantly, he did not have any physical contact with a minor in any way, shape, or form. Mr. Quillen has not shown physical violence, and while Mr. Quillen's conduct is concerning, "to the extent that harsh punishment is necessary in these types of cases to reduce the demand for material that results in harm to children, a defendant who does

not seek out the worst of the material should not receive the same sentence as someone who does."
*United States v. Hanson,* 561 F.Supp.2d 1004, 1009 (E.D. Wis. 2008).

That said, when considering the nature and circumstances of Mr. Quillen's conduct, this Court should sentence Mr. Quillen to a sentence at or below the 345-month average for similarly situated defendants.

### 2.      The History and Characteristics of the Defendant

The first § 3553(a) factor also requires the court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The presence of a stable history is significantly mitigating. *See United States v. Smith*, 39 F.4th 1012, 1018 (8th Cir. 2022) (finding downward departure from recommended sentence was warranted where the defendant had a stable childhood, is generally healthy, has a healthy relationship with his family, is educated, and has a consistent and stable employment history). Like the *Smith* defendant who had a generally stable history, Mr. Quillen has no prior criminal history, and his record is absent of even a hint of violence. Further, Mr. Quillen has healthy relationships with his family, and up to this point, Mr. Quillen maintained stable employment with no disciplinary reports from his employer. Mr. Quillen has been forthright and honest throughout the investigation, and the Government concedes that he has been helpful and cooperative with them as they attempt to locate victims of Mr. Quillen's conduct.

Consideration of Mr. Quillen's characteristics warrants a downward departure. *See United States v. Black*, 670 F.3d 877, 883 (8th Cir. 2012) (finding 18-month downward variance from recommended sentence was reasonable where the defendant pled guilty to two counts of possession of child pornography and the district court determined that defendant's lack of criminal history and his general characteristics weighed more in favor of a lenient sentence). Here, like the

*Black* defendant, Mr. Quillen had a completely clean record before this instance, and his characteristics throughout this matter portray honesty, sincerity, and candor and thus, warrant a downward departure from the recommended sentence. Additionally, like the *Black* defendant who pled guilty to the charges against him, the fact that Mr. Quillen pled guilty should be considered in his favor because it expresses an approach of taking adequate responsibility for his actions.

Due to Mr. Quillen's clean and stable history and his honesty and cooperation, this Court should sentence Mr. Quillen to a term at or below the 345-month average for similarly situated defendants.

### 3.     The Need for the Sentence Imposed

The second § 3553(a) factor is "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D).

Mr. Quillen does not contest that the pled-to crimes are serious. A district court departs from the guideline range when it finds a circumstance that the Guidelines do not adequately take into consideration, and there, "question is whether an individual case presents a 'characteristic or circumstance [which] distinguishes the case from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.'" *United States v. Paton,* 110 F.3d 562, 565 (8th Cir. 1997) (quoting *United States v. Lewis,* 90 F.3d 302, 304 (8th Cir.1996)) (quoting U.S.S.G. § 5K2.0). This case presents a circumstance that deviates from the typical case covered by the applicable guidelines because it lacks similarities to such cases like peer-to-peer

file sharing, "Dark Web" use, physical contact with a minor, and aggression toward law enforcement or government agents. *See United States v. Anderson*, 29 F.4th 388, 390 (8th Cir. 2022) (finding district court did not err by sentencing defendant at the bottom of his recommended range when defendant used a "Dark Web" peer-to-peer file sharing software to find and download child pornography, namely searching for images and videos of toddlers); and *United States v. Dehghani*, 550 F.3d 716, 723 (8th Cir. 2008) (finding the district court did not err in imposing an upward departure where the defendant was found guilty for notice to exchange child pornography over the internet, attempting to receive child pornography, attempting to distribute child pornography, and possession of child pornography and while in custody sent a letter to a newspaper containing threats to the sentencing judge and his family's lives, to assassinate President Bush, to plant bombs on city busses, and to poison the city's drinking water then hatched an escape plan with another inmate that involved subduing a female guard with a sharpened toothbrush).

Here, unlike both the *Anderson* and *Dehghani* defendants who presented many aggravating factors that enhanced their conduct, Mr. Quillen had not displayed these aggravating factors, nor any for that matter, and has only sought to assist the Government in their investigation, as conceded by the Final PSR.

Crimes are more serious when there is physical contact between the offender and the victim. *See United States v. Hill*, 552 F.3d 686, 689 (8th Cir. 2008) (finding a charge for prostitution of a 19-year-old was more severe than that of possessing child pornography where "an actual person [is] being used in prostitution by [the defendant] [and] being moved across state lines for the purposes of prostitution). Here, unlike the *Hill* defendant who physically engaged in prohibited conduct by transporting a 19-year-old across state lines for the purposes of prostitution, Mr. Quillen did not engage in physical contact with any of the victims in this case. While *Hill* can

be distinguished on the fact that it concerns prostitution, the district court judge explicitly mentions how the current prostitution charge differs from that of possession of child pornography because it is a hands-on offense.

As far as deterrence and the protection of the public, these goals are assumably already going to be accomplished by the other recommendations and various special conditions requested by the government that Mr. Quillen has not and will not be objecting to. Among these are the request for a term of supervised release of five years to life, requisite reporting of residence and changes of residence, place of employment, vehicle registration, papers, computer, and other electronic communication or data storage devices or media, no unsupervised contact with minors, no possession, use, or access to a computer or any other electronic device that has Internet or photo storage capabilities without notice and approval to the probation office, submission to a mental evaluation, participation in required sex offense-specific treatment program, and periodic polygraph tests as the probation office's discretion. These means are sufficient to meet the goals of deterrence and protection of the public.

Lastly, the fact that treatment in imprisonment can be achieved in a time less than the recommended sentence should be considered. *See United States v. Suschanke*, 641 F.3d 968, 969 (8th Cir. 2011) (finding the district court's 18-month downward variance from the recommended sentence was reasonable where the defendant and his adult son shared a computer containing over 600 videos and still images of child pornography, some that displayed sadistic and masochistic conduct but found that the defendant would be afforded sex offender treatment in a sentence of imprisonment that was less than the recommended minimum of 78 months). Here, like the *Suschanke* defendant whose sentence was reasonable where the court found that he could complete sex offender treatment while in prison in a time less than the recommended minimum, Mr. Quillen

does not need a life sentence to complete the adequate and requisite treatment for sex offenders while in prison. As this treatment, and any other treatment necessary, can be completed without the imposition of a life sentence, a lesser sentence should be applied.

Thus, this Court should sentence Mr. Quillen to the 345-month average sentence of imprisonment for similarly situated defendants.

**4.      The Kinds of Sentences Available and the Sentencing Ranges for Similar Offenses**

The third § 3553(a) factor is "the kinds of sentences available," *see* 18 U.S.C. § 3553(a)(3), and the fourth is "the kinds of sentence and the sentencing range established" for similar offenses. 18 U.S.C. § 3553(a)(4).

The sentences available for similar offenses is far below that of life imprisonment. *See United States v. Smith*, 39 F.4th 1012, 1017 (8th Cir. 2022) (finding district court was reasonable in imposing a downward variance of 288 months imprisonment from the defendant's recommended range of 360 months-life imprisonment where  the defendant worked as a science teacher at a high school, the victim was a 15-year-old female student who was in his class, the teacher tutored the student, the student was part of the school's astronomy club which the teacher led, and the student and teacher had sexual intercourse twice and exchanged sexually graphic text messages with one another); and *United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008) (finding district court was reasonable in imposing a downward variance of 300 months imprisonment from the defendant's recommended range of 324-405 months where the defendant regularly communicated with an officer posing as a 14-year-old girl in a yahoo chat room engaging in sexually explicit conversations under various different aliases of differing ages, genders, and occupations).

Here, like the *Smith* defendant whose sentence varied downward despite the fact that he was a teacher at the time of the offenses, Mr. Quillen has presented numerous mitigating factors and his position is similar to that of the *Smith* defendant. The Defendant would even argue that the circumstances in *Smith* are even more heinous than his case as the *Smith* defendant was the victim's teacher, he used his position and role in her life and at the school to commit the offenses, and he had actual sexual intercourse with the victim on multiple accounts. Further, like the *Pierson* defendant who received a downward variance even though he was using various online aliases to convince the supposed minor victim into engaging in sexual relations with him, Mr. Quillen used online aliases to engage in the prohibited conduct and should thus be subject to a downward variance.

Lastly, the Final PSR concedes that in the past five fiscal years (FY 2020-2024), there were 859 defendants whose primary guidelines was U.S.S.G. § 2G2.1 with a Final Offense Level of 43 and a Criminal History Category of I. ¶ 380. For these 859 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 345 months and the median length of imprisonment was 360 months. As previously explained, Mr. Quillen should be subject to a downward departure from the recommended life sentence because his case is similar to those in which a downward variance was warranted and defendants similarly situated to him have been sentenced to an average of 345 months imprisonment.

### 5.      Any Pertinent Policy Statement

The fifth § 3553(a) factor is "any pertinent policy statement." 18 U.S.C. § 3553(a)(5). The purpose of 18 U.S.C 3553 is so this Court can sentence Mr. Quillen to a term of imprisonment that is sufficient, but not greater than necessary, to achieve the goals of sentencing. Based upon the

aforementioned reasons, Mr. Quillen should be sentenced to a term of imprisonment at or below the average term for similarly situated defendants which is 345 months.

**6.      The Need to Avoid Any Unwarranted Disparities**

The sixth § 3553(a) factor is "the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  As has previously been established, a life sentence in this case would greatly vary from defendants who are similarly situated to Mr. Quillen as well as those who have committed similar offenses. Courts have also held that, as a matter of policy, the sentencing guidelines are excessive for child pornography offenses, and therefore, the courts grant "some relief" so defendants by sentencing them lower at times. *United States v. Munjack*, 669 F.3d 906, 908 (8th Cir. 2012) (finding district court properly sentenced the defendant to 97 months' imprisonment which was at the bottom of the range even where the judge characterized the defendant's child pornography collection as the "worst [he's] ever seen" because of its size, violent imagery, and depictions of prepubescent victims).

Here, the Court should grant Mr. Quillen a downward departure from the recommended life sentence because of the aforementioned policy reasons and the fact that Mr. Quillen's conduct does not even rise to the level of the *Munjack* defendant because his conduct does not display violence. To sentence Mr. Quillen to life imprisonment would be a great and unwarranted disparity in sentencing, and thus, Mr. Quillen should be subject to a downward variance from the recommended life sentence.

**7.      The Need to Provide Restitution**

The final § 3553(a) factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). In the Final PSR, Mr. Quillen agreed to pay restitution as ordered by the

court and additional assessments, including the $5,000 special assessment fee, not exceeding $50,000. ¶ 322. Mr. Quillen also agreed to make full restitution to the victims of his offenses, but at the time of the Final PSR, no victim had requested restitution. If and when that amount becomes available, Mr. Quillen could work and make payments of restitution both while incarcerated and upon his release as he is capable of working.

### III.    Conclusion

For these reasons and for the reasons stated in his sentencing memorandum, the Defendant, Bradley Quillen, respectfully requests that the Court depart and vary downward, as described, and sentence Mr. Quillen to imprisonment at or below the 345-month average sentence for defendants similarly situated to Mr. Quillen.

Respectfully Submitted,
Bradley Douglas Quillen, *Defendant*

By:    /s/ *Andrew R. Miller*
Andrew R. Miller, ABA#91238
Miller, Butler, Schneider,
Pawlik & Rozzell, PLLC
224 S. 2nd St., Rogers, AR 72756
T: 479-621-0006   F: 479-631-6890
amiller@arkattorneys.com

### CERTIFICATE OF SERVICE

I, Andrew R. Miller, state that I have on this 27th day of April, 2026, filed the foregoing with the Court's CM/ECF system, which will send notice of the filing and a copy thereof to all registered users.

/s/ *Andrew R. Miller*
Andrew R. Miller, ABA #91238

11